May it please the Court, I'm Celia Baron-Holtz, and I represent Canem on this appeal. Your Honors, we recognize that arbitration awards are entitled to deference and that we have a heavy burden here. We submit that this is the rare case where there was an egregious impropriety by the arbitrator and that vacatur is required. Canem's key defense to the four delay claims at issue on this appeal was that it didn't have successor liability, that it had never agreed to assume liability for delays to the project that occurred before it got into the project and before it had committed any contract breach. This project was five years along when Canem purchased Eastern Bridges' assets. Canem had no interest in acquiring Eastern Bridges' liabilities and it made that very purchase agreement, the APA. When Canem saw that Tully was going to argue that despite the APA, Canem was responsible for delays that occurred while Eastern Bridge was the steel supplier, Canem brought a declaratory judgment in New Hampshire seeking a declaration that Canem was not liable to Tully for anything that occurred prior to the APA. Didn't the Supreme Court of New Hampshire ultimately say that that litigation was limited to resolving the dispute between Canem and Eastern Bridge? What the New Hampshire court did was recognize that there was an arbitration agreement. It said, I'm not deciding whether contracts have been breached. I'm going to decide, the court said, what the APA says. And what the New Hampshire court said is that Canem assumed the liability of Eastern Bridge except those liabilities that are attributable to Eastern Bridges' failure to comply with the White Stone contract. And the New Hampshire court said, I expect the arbitrator to apply my construction of the APA and New Hampshire law in the arbitration. Tully was a party. Tully was in the courtroom. Tully had the right to be heard. Tully wasn't dismissed from the case. And so- Isn't the question still whether that's dicta and binding on the arbitrator and on the federal courts? Your Honor, when you want to consider whether something's dicta, you look to whether it's necessary to the result.  Now, this is as necessary to the result as it could be. But the length of it, I'm just going to read to you on page 79 of the appendix the New Hampshire court's order. Accordingly, the court limits this order to the terms of the APA between Canem and Eastern Bridge. Yes, the agreement was between Canem and Eastern Bridge. But the order is also limited to the terms of the APA between Canem and Eastern Bridge. No, because the court goes on to say that the court will not adjudicate the application of the APA. I'm sorry, I'm reading the wrong part. On A-79- I'm sorry, can you tell me what page you're on? A-79, Your Honor. Once the legal rights of the parties are determined under the APA, it is appropriate for the arbitration panel to apply those rights to the agreements in question. So I think when you look at the opinion, what the court is saying is, I'm only going to construe the agreement. But I'm issuing a decision that applies to all of the parties. I'm not, the court says, going to decide if the contracts were breached. But I am going to decide the declaration. I'm going to issue the declaration that was sought. And the declaration that was sought was that Canem wasn't liable to Tully for anything that occurred prior to the APA. And then Eastern Bridge cross-moved for its own declaration. And either way, the APA was critical to the outcome. Well, you agree that the New Hampshire's court here could have been a little clearer. Do you agree with that? I agree that the New Hampshire court could have been a little clearer. But I disagree. About the scope of the order? I think that we have to look at this, though, in terms of what the law of race judicata is. And the law of race judicata is that if you're a party to a case, you're bound by the judgment. So that I think we have to not just look at the opinion, but also the law of race judicata. But Your Honor, even if you throw the New Hampshire opinion. Here's my concern. Here you have an order, and you just agreed that it could have been a little clearer, that there's some lack of total clarity about the scope of the order. And so why is it that as a matter of manifest disregard of the law, that it's not a colorable reading of the order? You could be right, you could be wrong, that it did not include the specific dispute between Tully and Canham. That it was limited to the dispute, as the court states on 7778, between Canham and Eastern Bridge as to the interpretation of the asset purchase agreement. For two reasons, Your Honor. If you accept that this is dicta, it's basically saying where there's an arbitration nothing that a court says counts. Because that's basically the dicta argument. Not that it's, not that it's, not a focus on whether it's necessary to the result, but whether there's an arbitration pending. And that's not just. So, you know, the word dicta is a complex term. Here they're saying we are not resolving this issue. But that's not, but the court. Arguably they're saying that, at least there's a lack of clarity about that. The court didn't dismiss Tully. Tully appealed. It's, it was affirmed. Tully is a party to this case. If Tully's not going to be bound, it can't be a party to the case. But there's another reason that's a different reason that there's manifest disregard here, Your Honor. And that's because even if you throw the New Hampshire order out the window and you don't pay any attention to it at all, there still has to be a basis for finding that Canham had successor liability. And this arbitrator had a duty to give a reasoned award. He didn't acknowledge that issue. He didn't address that issue. And there is nothing in the contracts that supports successor liability by my, by my client. So even if you don't rely on New Hampshire, there's, there's still the fundamental issue. Where does successor liability come from? It doesn't just come out of the sky. And the arbitrator knew this was a critical issue. I mean, he knew that Canham had gone to, to New Hampshire to get a declaratory judgment. How could he not know that this was a critical issue? But his opinion doesn't deal with it. It doesn't deal with it at all. And he had to give a reasoned award. And I submit that he didn't deal with it because he was in a box. He'd already issued his damage awards when he was told by the district court here that he had to issue a reasoned award. And there is no way, there is simply no way to take those damage awards and have them make any sense in light of the party's contracts. He did what arbitrators sometimes do. He just did what he thought was the appropriate result, but it wasn't tied to the contracts. And then he had to give an explanation. He had to explain how he got to where he got. It's not asking much. The district court said you've got to explain how you got to the liability and damage awards that you made. And there are two contracts here that are absolutely critical. There's the APA, which is how my client got into this project. And then there's the letter agreement, which on its face is a contract. It says agreement. It's signed by the parties. Nobody disputes that.  I'm sorry, Your Honor. At some point, your position is that the arbitrator imposed pre-APA liability on Canem for, and correct me if I'm not remembering fully, the Cornell claim and the labor escalation claim. Yes, Your Honor. What is the basis for that argument? Tully had a damage chart in which it requested damages. It requested damages for a delay period that ran from December 2006 to April 2008. The arbitrator awarded 100% of the damages sought by Tully on the Cornell claim. Therefore, he clearly awarded damages for the entire delay period that Tully sought, December 06 through April 08. That one's crystal clear. The labor escalation one is a little less clear. There he said, I'm going to give Tully 69% of what it asked for. When you look at the math, and we have a footnote in the brief that shows you how when you go month by month, it has to be that some part of it is pre-APA. Now, it could be that most of it is pre-APA. We don't know that because he didn't explain what he did. But at least some of it must be pre-APA. So he has, Your Honors, an obligation to issue a reasoned award. And he doesn't address these key issues. And we submit he doesn't address these key issues because he doesn't have an answer. And so this is that rare case where the arbitrator acted in manifest disregard. And as the Second Circuit has held, one of the things that you can look to in determining whether there's manifest disregard is whether the arbitrator explained what he did. And the arbitrator here didn't explain what he did. I mean, he explained some aspects of his decision. There's an award, it's 11 pages long. I'm not saying he didn't address anything. But these critical issues, these two critical issues of the letter agreement, which goes to the end date of the delay period, and the APA, which goes to the beginning date, where you set the beginning date of the delay period. He didn't address them at all. Have you addressed, or will you address what is to be done with the interest on the escrow fund and who's to decide that? There, the arbitrator gave a credit. And the question is, how much should the credit be? Does it address the principle or does it include the interest? And. The answer. And the answer is, it must include the principle. It must include interest, because the arbitrator, if the arbitrator wanted to set the amount without basing it just on principle, he could have easily filled in the blank himself. So when he said that he wanted to credit the amount of the, with the amount that was in the escrow account, and he said, I forget the exact language, he said, Canem shall pay to Tully the initial award, the sum of $6.5 million and change, less the amount that Tully may now reimburse itself from escrow, approximately $961,000. He can't use the exact numbers because he's assuming that interest is going to be taken into account. That's what that word means. Yes, and interest grows. So it's not a question of whether Tully gets the money. Tully gets the principle and Tully gets the interest. It's a question of how much credit Canem was entitled to for that in computing the amount of the judgment. I'm sorry, when you say credit, what does that refer to? Because the way the judgment worked, Canem was told to pay Tully a certain amount less the amount that was in escrow. In the delivery agreement, which is the last agreement that the parties entered into, they agreed to escrow certain money. And so there was money sitting in that escrow account and the arbitrators. But the interest, all the interest was going to go to the party who was awarded the principle. Yes. As I say, there's no dispute about who gets the money. The issue is about what amount of credit off the judgment. You say you get the credit for the interest. We, that is what we say. That is what we say. I think I have a few minutes left according to the clock. I don't think so. But did you have another point that you wanted to raise? I just, I wanted to address the policy here. Okay, so we've used a good amount of your time. Why don't you address that final point and you'll still have two minutes of rebuttal. Thank you, Your Honor. The reasoned award requirement has a purpose. It's to constrain arbitrators. It's to make them more rigorous in what they do. And here's a case where an arbitrator didn't think he had to issue the kind of reasoned award he had to, and so he wasn't constrained. The purpose of arbitration, I know the Second Circuit has said that the law is meant to encourage arbitration. I'd submit that parties are going to be much more inclined to agree to have their disputes resolved by arbitration if they understand that the reasoned award requirement means something and that it constrains arbitrators. And I'd also submit that people are going to be more inclined to submit their disputes. This is an arbitrator who you selected, who your client selected. Yes, I mean, he was mutually agreed upon, but yes, he was initially nominated by our client. I don't dispute that. And he was a lawyer, and I think that's also important in thinking about where he went, how manifest disregard works. It's not like he was an engineer. It's not like he was an accountant. He was a lawyer. You're saying that when, I gather, that when he gave his long answer after it was sent back, he was not reasoning, he was rationalizing. He didn't address the issues at all, so we didn't even get to rationalizing. He didn't address those issues. But you have agreed to an arbitral award that provided conclusions of law and processes of fact. And we didn't. But, I mean, findings of fact and conclusions of laws, as I'm sure Your Honor knows, are very elaborate. And a reasoned award is a middle ground. It's something, you know, that it's more than a bare award, which doesn't have to say anything. In the way that I view it, I think, is that it's something less than a summary order that we issue. A reasoned award is less than a summary order? No, I would say a reasoned award would be more like a summary order. Which summary orders are you talking about? Well, I'm assuming the Second Circuit addresses the issues before it and provides some reason for its result that is rational. And that's what this arbitrator had to do. He didn't have to write a full-blown opinion, but he had to acknowledge that the issues were the issues and provide some rationale for the damage awards he made. And it comes down to, and correct me if I'm missing one of the principal arguments, but the, I mean, our summary orders will sometimes conclude with, we've considered the remainder of the petitioner's arguments and they are without merit. You're saying he needed to address the issue of successor liability and the imposition of pre-APA acquisition liability on your client. He needed to consider the central issues, the key issues. These were central, key issues, and he didn't deal with them. No, I don't say he had to deal with every single issue. But central, key issues, that's what this Court said in Leeward, and that's what he had to do, and that's what he didn't do. Thank you. May it please the Court, for Tully Construction Company, AJ Pegg, No Construction Company Joint Venture, Timothy Corey, and to my right, Chris Fenlon. Your Honors, sometimes it's best to go back before we go forward. And this court, 55 years ago, established the manifest disregard of the law standard. It is an exceedingly rare finding for this court to determine a manifest disregard of the law. And based on my review of the 100 Second Circuit decisions, only five were vacated. And of those three, there were grounds for vacature other than a manifest disregard of the law. And in reviewing those cases, it is clear that the manifest disregard of the law is inextricably intertwined with a public policy decision. In 1991, which was the first case this court vacated based on manifest disregard of the law, was the Permaline case. And that concerned a application of, or a conflict between the National Labor Relations Act and a union designation of super seniority status. In that case, after an arbitral award for a labor dispute, the court said that the panel disregarded the National Labor Relations Act. And for public policy reasons, it was inappropriate to designate a shop steward as having essentially immunity. That's not even close to the zip code that we have here. In the Ferenstock case, which is a little more interesting, because in that case, there was an award of punitive damages. And the court felt that it was, given New York Court's appeal decision previously, that determined it was for the court, not the arbitrators, to make a determination of punitive damages. They vacated the award in part. Only the application of the punitive damage component was vacated on a jurisdictional grounds. The panel had no jurisdiction for punitive damages, only the court did. In Halligan, it was a instance of age discrimination case. The EEOC in 1998 submitted an amicus brief, I'm sure for policy reasons. And in that case, the arbitrator's award was essentially bereft of any decision. It was a summary, one-line award. And the court vacated, we believe, because of public policy grounds. But also, in the mountain of evidence, in the face of admitted age discrimination by the employer, the court said there is no basis in factor law, and it had to have violated, the panel had to have ignored the prevailing law on employment discrimination based on the absence of any articulation. Shortly after that, the Second Circuit reined that court in and said, in reviewing vacature of awards, we look at was there barely colorable reason, and was there any justification at all in the award? Most recently, in the New York Telephone case, it was an illegal contract. An employer could not contribute to a fund that benefited the employees. And most recently, as a Porzig case, and that was the perfect storm of calamity. There was misrepresentations by counsel. There was an award of attorney fees, and it was remanded because the panel, in a clear violation of the statute, refused to award attorney's fees. It was remanded, the court told the panel to award attorney's fees. They awarded them and imposed the wrong standard. So this court has been self-selecting and very, very cautious about deference to arbitrators. And as to- Your adversary argues that a central issue here is the issue of successor liability, that her client, the arbitrator, imposed pre-ABA liability on her client and that there was no justification for that and no explanation. Well, that's a brand new argument, Your Honor, but I'll address it head on. First of all, let's go back again to the New Hampshire court order. At that time, there were three parties to the arbitration. There was Eastern Bridge, Can-Am, and Tully. Eventually, the arbitration, which was a private arbitration, that arbitration was bought before the AAA. There was a private arbitration between Tully and Can-Am, which gives rise to this appeal. That is why the dictum in the New York court says we're not touching the intersection of rights between the completion agreement, which predated the APA, as well as the delivery agreement, which postdated the APA. And the both agreements had a clawback provision that said from the beginning of the project to the end of the project, that window of delay still exposes Can-Am to liability. As vis-a-vis Eastern Bridge, the New Hampshire order is perfectly consistent. This Court could affirm Can-Am could still go after, consistent with the New Hampshire order, EB for its remedy. But the New Hampshire court was very deferential, and I'll agree with all your all the judges' interpretation. It is not the model of clarity. There is something for everyone in that order. But what is clear in that order was that the New Hampshire court was not going to trample on or interfere with the arbitrator's rights to determine the body of agreements as between the parties and the respective liabilities, which, again, to repeat, at that time was a tripartite determination. In this case, it was between these two parties here today. And to address Leeward, Leeward says that a reasoned award does not require explaining each and every ruling to a dissatisfied party. In this case, we believe that the arbitrator did. He weighed the evidence in respect to the labor escalation claim, which Your Honors mentioned. He specifically said there were audit issues, and that's how he came up with a 69 percent rating. All the Court need do is look at Exhibit A24. It is four pages long. There are 54 separate line items. That's the damage summary. That's not the damage evidence that was amassed and hotly contested throughout this case. That's just the summary. And each one of those was a separate trial within that arbitration. There were 800 exhibits. There were 11 witnesses. This was hotly contested over each and every dollar. And the irony is that the 15 days are up. And the irony is Tully's demand, because it was adjusted, the record reflects that the initial demand was $20 million, which included a liquidated damage assessment by the New York State Department of Transportation. Those damages were not assessed as of that time, so evidence was not presented on those. So the revised damage summary submitted by Tully was $14 million. So under Can-Am's theory, there was 7.5 million reasons why the panel got it right, but there were 6.5 reasons why the panel got it wrong. This is the judicial equivalent of a do-over. And the ruling by John Krull, who is not only a lawyer, is also an engineer and teaches scheduling at Manhattan College. So this was a knowledgeable arbitrator who went through the mountain of evidence for 16 months of delay, took each one of the damage categories, made considered evidentiary findings and testimonial findings within the body of that award, and made distinguishing comments given the damage assessment, the duration of delay, and the body of proof. And back to my labor escalation, he had determined the 69% was because of audit issues with the proof. This is a little, dare I say, appendix, so small issue compared to what's going on. But do you agree with your adversary with respect to that interest on the escrow? Absolutely not, Your Honor. If there was an issue with the interest, that was to be subject to a motion to modify or a motion to clarify pursuant to AAA rules, which must have been filed 30 days after the arbitration award. Moreover, and more significant, KNM was invited to release those funds from escrow at the time of the award and declined. More importantly, if their construction is right, then it would have been a floating interest award. So if we had gone into a period of great recession where interest rates went down from 1 to 1 percent and the escrow account actually faded from its initial deposit, that would have been a risk Tully took. Now they want the reward of it on top of depriving us of the money. Is this something we're supposed to decide or you say it's already been decided? I don't think you're quite this – with all due respect, I don't think this Court has jurisdiction to decide that. I believe this should have been decided long ago by the arbitrator, either as against Maybe so, but does that mean for this little piece, we have to send it back to be decided? I believe Your Honors can dismiss it as not being the subject of this appeal and beyond the scope of this appeal and one that is barred because they did not file a motion to modify or a motion to vacate on that ground. Thank you, Your Honors. Very briefly, Your Honors, my adversary pointed to no place in the revised award where the arbitrator addressed the issue of the letter agreement or successor liability. He pointed to nothing that would suggest that these issues were not key issues in the arbitration. He pointed to nothing in the contracts that would provide even a barely colorable basis for the arbitrator's decision to impose damages on my client on those four claims. With respect to the interest issue, Your Honor, it was raised in the District Court. Judge Gardefee took submissions on it. Judge Gardefee made a decision. There was, to the best of my recollection, no argument made in the District Court. The decision was made by Judge Gardefee? Judge Gardefee. And it was doubtless in accordance with your understanding of what it should have been? No, no, Judge Gardefee didn't do it the way we thought he should do it. You're saying that they forfeited this argument. Did they make the argument about modification? That's what I'm saying, Your Honor. I have no recollection of that being argued below. I think this is the first time I'm hearing about the proper course being a motion to modify or vacate. I don't recall that being in the briefs before this court or argued to the District Court. But certainly the District Court dealt with these issues, and I think we have the right to appeal from them given that he dealt with them. Thank you. Thank you both.